IN THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

```
┌────────────────────────────────┐
│ FILED BY_____D.C.    │
│                                │
│ NOV 18 2019                    │
│                                │
│ ANGELA E. NOBLE                │
│ CLERK U.S. DIST. CT.           │
│ S. D. OF FLA. - MIAMI          │
└────────────────────────────────┘
```

**KANYARI KNIGHTS**

**Plaintiff,**

vs.                                                                    **Case No.:**

**TYE ROGERS ORLANIS**

**Defendant,**

_____

## PLAINTIFF'S COMPLAINT OF DISCRIMINATION, INJURY AND LOSSES

COMES NOW, Plaintiff, Kanyari Knights, by Pro Se, act pursuant to Jurisdiction invokes 42 U.S.C. § 3612 in that Plaintiff elects to assert his claims of housing discrimination in a civil action; pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) in that this is a civil action seeking to redress the deprivation of the right to fair housing pursuant to 28 U.S.C. § 1337 in that defendant unfair housing practices create a restraint on commerce, and pursuant to 28 U.S.C. §§ 2201 and 2202 for declaratory and injunctive relief against Defendant TYE ROGERS ORLANIS as secured to the Plaintiff by the Fair Housing Act and the Civil Rights Act of 1866.

The venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) in that the claims arose in this district, and Defendant conduct business in this district.

Plaintiffs states as follows:

The Defendant, TYE ROGERS ORLANIS, has violated the Fair Housing Act ("FHA") by not providing habitable living facilities to the Plaintiff with bias because of the Plaintiff's ethnicity. The Defendant has also violated the law in engaging in several actions that abused the Plaintiff's Disability rights.

## **Parties**

Plaintiff, Kanyari Knights, is a citizen (by birth) of the United States and a resident of Hollywood, Florida and is 43 years old African- American with training as a Jewelry Designer and Physical Exercise Trainer.

Plaintiff was illegally evicted from the apartment he rented as a result of false pleading made by the Defendant to the County Court of Broward County, Florida, with the assistance of his contacts in local government and through improper pleading and influence.

Plaintiff was intimidated and threatened, including being denied continued rental housing himself, on account of his race, and also because he aided and encouraged black persons in the exercise and enjoyment of their rights under the Fair Housing Act and Civil Rights Act. Plaintiff was and continues to be adversely affected by the acts, including being without permanent housing, omissions, policies, and practices of the Defendant.

Defendant, Tye Rogers Orlanis entered into a rental contract as the owner of Apartment located at 520 S. 19 Avenue, Hollywood, FL 33020 bearing description as # Apt 7 (rented) to the Plaintiff, however, it was later recognized that the said apartment is the property of Boris Kressevich and Susan Kressevich.

**Factual Allegations**

The Plaintiff, KANYARI KNIGHTS, is a Federally certified Disabled person based on his visual impairment entitling him to special provisions as a disabled person under the Fair Housing Act. Plaintiff obtain subsistence to cover living expenses from the United States Government Social Security Program

On Saturday September 16, 2017 the Defendant sought to engage in retaliatory action by leaving a letter/notice on the Plaintiff's apartment door (which was not duly served) purporting to officially request payment of one month rental in arrears as a result of the Plaintiff's issuance of notice of withholding rent to the Defendant in accordance with Florida statutes that the plaintiff mailed to the Defendant via certified USPS mail and fax September 15, 2017.

Regular Abuse was made by the Defendant via threats and remarks of being involved with the Plaintiff's estranged wife. The Plaintiff has appraised the local authorities of the improper and inhabitable conditions of the Apartment, which the Defendant has rented him to be Inhabitable and which has resulted in severe exposure and threat of harm by the hurricane during the period cited earlier. This was due to the insecurity of the physical conditions of the said property.

The conditions of the Apartment included the Air Conditioning Unit in Bedroom being inoperable, Rodent infestation, the Screen for right Bedroom window required repairs that were requested from October 2014, Paint peeling from Wall, the Bedroom Door requires repainting, Carpet requires replacement, the Dining Room Window is broken and require replacement, the Stove in need of replacement, the Kitchen light over sink has no protection, the Kitchen counter needs to be replaced, the Kitchen Floor needs repairs, the Livingroom screen is missing and the Porch chairs removed since hurricane Irma, requires replacement. One exhibit attached.

The facts of the case have demonstrated that the Defendant continued on his course to deny the Plaintiff his federally protected rights. In fact, he continues to fail to acknowledge the illegality of his acts.

## Intentional Infliction of Emotional Distress

As a result of the defendant's actions, the plaintiff has suffered and is continuing to suffer injury including, but not limited to, substantial loss of income and loss of benefits.

As a result of Defendant's actions, the plaintiff has suffered and is continuing to suffer

injury including emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of

enjoyment of life, and other non-pecuniary losses (not excluding real and other properties.)

Plaintiff seeks redress to the wrongs alleged herein, and this suit for equitable, compensatory, and punitive damages, is plaintiff's only means of securing adequate relief.

## <u>Disability Laws</u>

In general, a landlord cannot evict a person because they have a disability unless the disability is

causing additional problems for the landlord.

The federal Fair Housing Act and Fair Housing Amendments Act (42 U.S. Code §§ 3601-3619,

3631) prohibits discrimination against people who:

- have a physical or mental disability that substantially limits one or more major life activities—examples include, but are not limited to:
- mobility impairment, hearing impairments, visual impairments, chronic alcoholism (if it is being addressed through a recovery program), mental illness, HIV, AIDS, and AIDS-Related Complex, or, mental retardation, and who, have a history of such a disability, or, are regarded by others as though they have such an impairment.

Landlords are not allowed to question applicants about disability or illness or ask to see

Medical records. Even if it is obvious that you are disabled—for example, you use a wheelchair

or wear a hearing aid—it is nevertheless illegal for the landlord to ask for more information

about the disability, including how severely you are disabled.

The policy behind this rule is simple: No matter how well-intentioned the inquiries, a landlord

cannot make decisions about where and how you will live on the property that the landlord would not make were you not disabled.

For example, if there are two units for rent—one on the ground floor and one three stories up—the landlord must show both units to an applicant who uses a wheelchair, however reasonable the landlord thinks it would be for the applicant to consider only the ground-floor unit.

## The Fair Housing Act

The purpose of the Fair Housing Act is "to provide within constitutional limitations, for fair housing throughout the United States" 42 U.S.C. § 3601. Therefore, there are twin goals that must be achieved through structuring injunctive relief, and these goals are to insure that the Act is not violated in the future and to remove all lingering effects of past discrimination. Marable v. Walker, 704 F. 2d 1219, 1221 (11th Cir. 1983). The Fair Housing Act provides for the enforcement of the Act by private persons. 42 U.S.C. § 3613. The Act provides for actual and punitive relief and clearly states that an individual may seek injunctive relief:

> …may grant as relief, as the court deems appropriate any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the Defendant from engaging in such practice or ordering such affirmative action as may be appropriate…

42 U.S.C. § 3613(c)(1). The injunctive relief being requested in this order clearly falls within this provision, and the purpose of seeking this injunctive relief is to ensure that the discriminatory action of the Defendant does not occur again. It has been stated that the Courts "have not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future."

See Int'l Bhd. Of Teamsters v. United States 431 U.S. 324, 364 (1977). Courts should use their "broad equitable powers" so as "to make possible the fashioning of the most complete relief possible." Int'l Bhd. of Teamsters, 431 U.S. at 364. Furthermore, the district court has broad and flexible power to shape an effective remedy for fair housing violations. See James v. Lucas Metro Housing Authority, 833 F. 2d 1203, 1207-08 (6th Cir 1987), United States v. City of

5

Parma, Ohio, 661 F 2d  562, 567 (6th Cir 1981), United States v. Yonkers Board of Education, 837 F 2d 1181 (2 Cir 1987).

In fashioning equitable relief for the violation of the Fair Housing Act, trial courts are to be guided by its underlying purposes. Smith v. Town of Clarkton, 682 F.2d 1055, 1068 (4th Cir. 1982). When formulating injunctive relief, the court has broad and flexible powers to shape an effective remedy for fair housing violations. Jaimes v. Lucas Metropolitan Housing Authority, 833 F.2d 1203, 1207 (6th Cir. 1987). The court has a high degree of discretion to choose between various possible remedies to equitable fashion relief to fit the specific circumstances of the case. Marable, 704 F.2d at 1221.

When a plaintiff proves a violation of the Fair Housing Act, a presumption of future violation and harm arises. Silver Sage v. City of Desert Hot Springs, 251 F. 3d 814, 826-827 (9th Cir. 2001). Once a violation of the law has been found, injunctive relief is appropriate unless the Defendant can demonstrate that "'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one." United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953) (Clayton Act), quoting United States v. Aluminum Co. of America, 148 F.2d 416, 448 (2d Cir. 1945). See also Weeks v. Chaboudy, 984 F.2d 185, 189-190 (6th Cir. 1983) (Section 1983.

Injunctive relief is proper in this case to prevent future violations of the Fair Housing Act. In discrimination cases, "the court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." Parkview Heights Corporation v. City of Black Jack, 605 F.2d 1033, 1035-36 (7th Cir. 1979), quoting Albemarle Paper v. Moody, 422 U.S. 405, 418-19 (1975). In this case, the Defendants cannot show that there is a reasonable likelihood that his discriminatory conduct will not be repeated absent an injunction. In fact, none of the Defendants took responsibility for their conduct at trial, nor have they shown any remorse. This further intensifies the extreme need for injunctive relief as these comments, whether intentionally or

thoughtlessly made, affirmatively further the discriminatory effects of the defendant's actions and the erroneous belief that the defendant's acts were acceptable, and other landlords should do the same. See, e.g. Parkview Heights Corporation v. City of Black Jack, 605 F.2d 1033, 1035-36 (7th Cir. 1979)(the court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.)

In light of Defendant's conduct, this Court should exercise its discretion to issue the equitable relief.

The Plaintiff requests that Defendant be prohibited from the following:

a. Discriminating against any person in the terms, conditions, or privileges of renting a dwelling unit, or in the provision of services or facilities in connection therewith, because of disability; and

b. Causing potential harm, limitation of mobility constituting discrimination based on disability, and intimidating the Plaintiff.

In this case, the evidence established that Defendant engaged in multiple and repeated violations of the Fair Housing Act, and a general injunction is appropriate. The Plaintiff also seeks specific injunctive relief against Defendant that is tailored toward ensuring that discriminatory conduct does not occur again at their properties and to eliminate the discriminatory effects of the past as well as bar like discrimination in the future. Specifically, the Plaintiff proposes that the Court require that Defendant, for a period of *five* years, to do the following:

(1) Attend, and require their agents and employees to attend annual training on the Fair Housing Act;

(2) Adopt and implement a nondiscrimination policy

(3) Notify tenants of this policy and of their right to file a complaint or to contact them directly or contact the Department of Housing and Urban Development ("HUD") if they believe they have been discriminated against; and

(4) Amend their advertising to include language regarding not discriminating against persons based on their protected status;

(5)   Conduct affirmative outreach to local community service organization that provide services to persons with disabilities in Florida.

(5)   Placing one legal notice in the local News  relating to the prohibitions of the Fair Housing Act and providing information regarding filing a complaint under the act, in the form as attached to the proposed order;

(5) Require reporting of all Fair Housing complaints and undergoing testing on a bi-annual basis to ensure compliance with the Order.

1.      **Annual Training**

The Court should require Defendant, and all of their owners, officers, agents, and employees to undergo annual education and training on the Fair Housing Act. *See e.g.,* City of Parma, 661 F.2d at 577 (requiring city to implement educational program to acquaint employees with their obligations under remedial order). Every year, the employee, managers, corporate officers, and owners should also be required to sign an acknowledgment that they will comply with the FHA and with Defendants' policy on nondiscrimination. Such measures are particularly important in this case, as the Defendant's managers had testified that they had received training on the Fair Housing Act, but nonetheless continued to discriminate against the plaintiffs with malice or deliberate indifference to their protected rights, and continue to believe that their actions were justified by their myths and stereotypes of persons with disabilities. Such training

should be done by the Fair Housing Continuum, Inc., as the local HUD-funded Fair Housing

Organization for Fair Housing Education and Outreach. The cost of such seminars will not

exceed $500.00 per year, not including the costs of the location in which the seminar is held.

### 2.     Non-Discrimination Policy

Second, the Court should require Defendant to adopt and implement a written Nondiscrimination

Policy for all residential properties Defendant own or manage. Within thirty (30) days of the entry of

this Order, Defendant shall distribute a copy of the Nondiscrimination Policy and a copy of the HUD

booklet, "Fair Housing: Equal Opportunity for All," to each household occupying any rental dwelling that

either of them own, operate or manage, and shall provide to counsel for the Plaintiffs a statement

certifying under penalty of perjury that they have distributed the Nondiscrimination Policy and the HUD

booklet. Thereafter, Defendants shall provide a copy of the Nondiscrimination Policy and the HUD

booklet to each new household occupying any rental dwelling that either of them own, operate, or

manage at or before the time that the resident(s) sign a lease or otherwise take possession of the dwelling.

Defendants should distribute this policy, along with a pamphlet from HUD, describing the Fair

Housing Act and its enforcement provisions to all tenants during the term of this Order. The Policy

should also invite tenants to contact the Defendant, or HUD directly if they believe they have

experienced or witnessed unlawful discrimination.

Nondiscrimination policies are an important component of FHA remedial orders. *See,*

*e.g.,* City of Parma, 661 F.2d at 577. Reporting and recordkeeping requirements have been

upheld a number of times by courts as being an important component of FHA remedial orders.

*See e.g.,* United States v. West Peachtree Tenth Corp., 437 F.2d 230-31 (5th Cir. 1971)

(requiring Defendants to maintain records and file reports of compliance with the United States

at three-month intervals); Jamestown Ctr.-In-The-Grove Apts., 557 F.2d 1079, 1080-81 (5th Cir.

1977) (directing the district court to impose additional injunctive relief, including record-keeping and reporting requirements); United States v. Brosh, No. 02-CV-0368-DRH, at 13 (S.D. Ill. Nov. 20, 2003) (memorandum and order) (requiring Defendants to retain certain records and to make them available to counsel for the United States and HUD).

Adoption of a nondiscrimination policy, notice to tenants, and reporting requirements are particularly necessary here, where the lack of such a policy and requirements contributed to the discrimination and harm in this case. Adopting and establishing a nondiscrimination policy ensures that future tenants are informed of their rights not be discriminated against at the subject properties and will know how to contact HUD or the Fair Housing Continuum if there is a problem.

### 3.    Advertising and Outreach

It is the duty of this Court to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future. Parkview Heights Corporation v. City of Black Jack, 605 F.2d 1033, 1035-36 (7th Cir. 1979), *quoting* Albemarle Paper v. Moody, 422 U.S. 405, 418-19 (1975). In this matter, the Defendant is unapologetic to the point in which their agent continues to espouse statements in the local community which continue the discriminatory effect of their behavior past the more than 100 units that the Defendant operates in the Daytona area. By publishing the legal notice in the Daytona Beach News Journal, as attached to the Order as Appendix A, it is an inexpensive method of this defendant to notify the public that its illegal behavior is not justified by good intentions and that the Defendant is required to comply with the law. Further, it serves as a method to eliminate the discriminatory effects of such statements on other housing providers

### 4.    Redress

Plaintiff seeks to obtain redress the wrongs alleged herein, and this suit for equitable, compensatory, and punitive damages, is plaintiff's only means of securing adequate relief.

10

## Count I

**Violations of the Fair Housing Act**

Plaintiffs repeat and reallege each preceding paragraph as if fully set forth herein.

Defendants, in violation of 42 U.S.C. § 3604, have discriminated against Plaintiff because of his race.

Defendants, in violation of 42 U.S.C. § 3617, have discriminated against Plaintiff having aided or encouraged black persons in exercise and enjoyment of their rights under the Fair Housing Act.

Defendant's violations of 42 U.S.C. §§ 3604 and 3617 have also caused harm to Plaintiff Defendant, Tye Rogers Orlanis, is the operator of Apartment located at 520 S. 19 Avenue, Hollywood, FL 33020 bearing description as # Apt 7 rented to the Plaintiff, which is owned by Boris Kressevich and Susan Kressevich and is liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 3604 and 3617, because, at all times relevant hereto, Defendant was acting (a) at the express direction of, and/or (b) with the consent of, and/or (c) under the control and supervision of, and/or (d) within his authority as an agent of Boris Kressevich and Susan Kressevich, is also liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 3604 and 3617, because, at all times relevant hereto, Defendant was acting (a) at the express direction of, and/or (b) with the consent of, and/or (c) under the control and supervision of, and/or (d) within his authority as an agent and is liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 3604 and 3617.

133. Defendant while acting as the agent of the property is liable for the violation of Plaintiff's rights under 42 U.S.C. § 3604.

## Count II

**Violation of the Civil Rights Act of 1866**

Plaintiffs repeat and reallege each preceding paragraph as if fully set forth

herein.

Defendants' pattern, practice, and policy of discrimination have denied Plaintiff

the same rights enjoyed by non-Black citizens to contract for and to lease real property in

violation of 42 U.S.C. §§ 1981 and 1982.

Defendants, in violation of 42 U.S.C. §§ 1981 and 1982, have discriminated against

Plaintiff Smith by denying him enjoyment of his rights under the Civil Rights Act.

Defendant's violations of 42 U.S.C. §§ 1981 and 1982, have caused harm to Plaintiff .

Defendant, operator of the property is liable for the violation of Plaintiffs' rights under 42

U.S.C. §§ 1981 and 1982.

Defendant was acting (a) at the express direction of, and/or (b) with the consent of,

and/or (c) under the control and supervision of, and/or (d) within his authority as an agent

of the Owner.

Defendant is also liable for the violation of Plaintiffs' rights under 42 U.S.C. §§ 1981 and

1982, because, at all times relevant hereto, Defendant was acting (a) at the

express direction of, and/or (b) with the consent of, and/or (c) under the control and

supervision of, and/or (d) within his authority as an agent of the Owners of the Property.

Defendant, while acting as the manager and agent of the property owner, is liable for the

violation of Plaintiffs' rights under 42 U.S.C. §§ 1981 and 1982.

Defendant while acting as the agent of the property owner, is liable for the violation of

Plaintiffs' rights under 42 U.S.C. §§ 1981 and 1982.

### Relief Sought

WHEREFORE, Plaintiffs respectfully request that the Court:

A. declare the actions of Defendant complained of herein to be in violation of the Fair

Housing Act, as amended, 42 U.S.C. § 3601, et seq. and the Civil Rights Act of 1866,

42 U.S.C. §§ 1981 and 1982;

B. order Defendant to take appropriate affirmative actions to ensure that the activities

complained of above are not engaged in again by him or any of his agents;

C. permanently enjoin Defendant, their agents, employees, and successors from discriminating on the basis of race against any persons in violation of the Fair Housing Act of 1965 or the Civil Rights Act of 1866;

D. award compensatory and punitive damages to Plaintiff against Defendants, to compensate Plaintiff for, among other things, the humiliation, embarrassment, and emotional distress caused by Defendant'' discriminatory actions, and loss of equal housing rights;

E. award compensatory and punitive damages to Plaintiff against the Defendant to compensate Plaintiff for, among other things, the drain on his resources that can be attributed to the frustration of Plaintiff

F. award appropriate punitive and compensatory damages to Plaintiff and against Defendant for, among other things, the mental and emotional distress, humiliation, and embarrassment suffered by Plaintiff because of Defendants' discriminatory practices, which directly affect his rights; award costs and reasonable fees in this action; and Plaintiff such other and further relief as the Court deems just and proper.

G. Issue a declaratory judgment holding that the actions of the defendants violated the rights of plaintiff under Federal law.

H. Enter an order requiring the defendants to make plaintiff whole by awarding plaintiff equitable (including back pay and front pay) damages, compensatory damages, treble damages, and punitive damages, costs to include costs of investigation, fees, expenses, and pre-judgment and post-judgment interest.

I.      Plaintiff further prays for such other relief and benefits as the cause of justice may require.

   1. Compensatory damages in the amount of seven hundred and fifty thousand dollars

   2. Punitive damages;

13

3. Interest as allowed by law;

4. Costs of suit; and

5. Such other and further relief as this court may deem just and proper.

WHEREFORE, Plaintiff, KENYARI KNIGHTS, respectfully request that this Court enter Judgment pursuant to trial against Defendant, TYE ROGERS ORLANIS and order the legal equitable relief set forth, and further reserve enter an order on the Plaintiff's fees and costs.

Respectfully submitted this 18 day of Nov. , 2019.

Respectfully submitted,

Kanyari Knights, Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Nov 18, 2019, I have filed the foregoing document with the Court. I also certify that the foregoing document is being served this day on the Defendant as follows:

Tye Roger Orlanis
424 S 13 Avenue,
Hollywood, FL 33019

Kanyari Knights, Pro Se

P.O. Box 220332
Hollywood, FL 33022

## <u>Attachment</u>

## Exhibit 1.

Exposed Electrical lighting in the Kitchen area of the Apartment

